# MEMO ENDORSED.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

321 PRECISION CONVERSIONS LLC,     :

          :    Case No. 25 Civ. 07304 (DEH) (OTW)

          Plaintiff,   :

          :

  - against -       :

          :    **JOINT ELECTRONIC**

SPECTRE CARGO SOLUTIONS LLC and  :    **DISCOVERY SUBMISSION AND**

SPECTRE AIR CAPITAL LLC,     :    ~~**PROPOSED**~~ **ORDER**

          :

          Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

The parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests. This Joint Electronic Discovery Submission and Proposed Order shall govern the electronic discovery process in this action, as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. The parties and the Court recognize that this Joint Electronic Discovery Submission and Proposed Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

1.     **Brief Joint Statement Describing the Action:**

This dispute centers on the the A321 Conversion Agreement dated June 17, 2022 (the "Conversion Agreement"), a contract for the conversion of Airbus A321-200 aircraft from passenger to freighter configuration between Plaintiff/Counter-Defendant Precision 321 Conversions LLC ("Precision") and Defendant/Counter-Plaintiff Spectre Cargo Solutions LLC ("Spectre Cargo"). Precision has asserted breach of contract and related claims against Spectre Cargo as well as its parent company, Spectre Air Capital LLC ("Spectre Air"). Spectre Cargo

1

has asserted breach of contract and related counterclaims against Precision. Spectre Air has filed

a Motion to Dismiss. (ECF No. 41.)

    **(a)**    **Estimated amount of Plaintiff's Claims:**

      _ Less than $100,000

      _ Between $100,000 and $999,999

      X Between $1,000,000 and $49,999,999

      _ More than $50,000,000

    **(b)**    **Estimated amount of Defendant's Counterclaim/Cross-Claims:**

      _ Less than $100,000

      _ Between $100,000 and $999,999

      X_ Between $1,000,000 and $49,999,999

      _ More than $50,000,000

**2.**    **COMPETENCE**

Counsel certify that they are sufficiently knowledgeable in matters relating to their

clients' technological systems to discuss competently issues relating to electronic discovery, or

have involved someone competent to address these issues on their behalf.

**3.**    **MEET AND CONFER**

Pursuant to Fed. R. Civ. P. 26(f), counsel have had an initial meet and confer regarding

electronic discovery issues on January 9, 2026.

**4.**    **UNRESOLVED ISSUES**

At this time, the parties do not anticipate any issues that require court intervention. The

parties will continue to meet and confer regarding the following issues and report to the court

any areas that require intervention: Preservation; Search and Review; Source(s) of Production;

Form(s) of Production; Identification or Logging of Privileged Material; Inadvertent Production of Privileged Material; and Cost Allocation.

## 5.    PRESERVATION

1.    The Parties have discussed the obligation to preserve potentially relevant electronically stored information ("ESI") and will continue to discuss the scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.

2.    The Parties have not, at this time, agreed to disclose the date, contents, and/or recipients of "litigation hold" communications, but reserve the right to request such information in discovery if preservation or spoliation becomes an issue in dispute.

3.    The Parties do not, at this time, anticipate the need for judicial intervention regarding the duty to preserve, the scope, or the method(s) of preserving ESI.

## 6.    SEARCH AND REVIEW

1.    The parties agree that in responding to an initial Request for Production, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. The parties have discussed, or intend to discuss, methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations

on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc.

2.     The parties will identify custodians whose records they propose to search to obtain documents relevant to the claims and defenses in this case, as well as any date parameters. The parties will also meet and confer concerning potential sources of electronically stored information, such as email, personal electronic devices, hard drives, computers, instant messages, ephemeral data, etc.

## 7.     PRODUCTION

1.     Source(s) of Electronically Stored Information. The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information: email, word processing documents, spreadsheets, payment records, databases, presentations, websites.

2.     Limitations on Production. The parties have or will discuss factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data.

## 8.     PRODUCTION FORMAT

The parties have reached the following agreements regarding the form of production of ESI:

1.     Load Files. The producing party shall provide load files to accompany the TIFF images and text files that are produced, to facilitate the use of the production by a document management or litigation support system. Load Files shall indicate document breaks and contain the parent/child (email/attachment) relationships of documents, when possible. ESI shall be

produced with the following load files: (a) delimited data file (.dat); and (b) an image load file (.opt). The Metadata load file shall use the following delimiters:

- Column Delimiter: Para – ¶ (ASCII 020)

- Text Qualifier: Thorn – þ (ASCII 254)

- Newline: Registered sign - ® (ASCII 174)

2.      Metadata Fields and Processing. All Metadata fields identified in Appendix 1 that are reasonably available and captured for a document at the time of collection shall be produced in a delimited .dat load file unless that field is privileged, for example, a filename. Appendix 1 sets forth the relevant fields to be produced with paper documents to the extent the information is reasonably available. Nothing in this Submission shall require any party to extract, capture, collect or produce Metadata if it does not exist, is not reasonably accessible or available for any documents produced, or would be burdensome to provide.

3.      ESI Date and Time Processing. A party's ESI will be processed using a consistent time zone.

4.      Bates Numbering. Each page of a TIFF image must be assigned a unique Bates number, with the unique Bates number as the prefix for the TIFF image filename. The Bates number shall always: (1) be unique across the entire document production; (2) maintain a constant length of 8 digits across the entire production, with padded zeros as placeholders for unused digits; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document. The Bates number will also be electronically affixed to the image at a location that does not unreasonably obliterate, conceal or interfere with any information from the source document. The Bates number prefix will identify the producing party. In the event documents are produced on a rolling basis, the parties shall use consecutive Bates numbering.

5

5. Confidentiality. Responsive ESI, whether produced as TIFF images or in Native Format, that is subject to a claim of confidentiality shall be labeled in accordance with the stipulated confidentiality and protective order entered into between the parties or ordered by the Court.

6. TIFFs. Images shall be provided for each document not produced in Native format as single-page, black-and-white, with at least 300 dots per inch (DPI) print setting, Group IV* tagged image file format (TIFF) images. Each image shall have a unique file name indicating the Bates number of the document. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape) where reasonably possible. TIFFs shall display text and images, which would be visible to the reader using the Native software that created the document, including bcc lines for emails, redlines, track changes, comments, hidden slides, speaker notes, hidden rows, hidden columns and/or hidden worksheets with all filters cleared. Every TIFF file must be referenced in the production's corresponding load file. The total number of TIFF files referenced in a production's load file shall match the total number of TIFF files in the production.

7. Color. Documents containing color need not be produced in color. However, the parties will consider reasonable requests for reproduction of specific images in color if an original document contains color necessary to understand the meaning or content of the document. A party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the requesting party demonstrates that the loss of the color detracts from the usability or reduces the ability to understand the information imparted in the original. Categorical or wholesale requests for production in color are invalid. Any documents produced in color shall be produced in JPG format.

8.      Text Files. For each document, a single, multi-page Unicode text file shall be produced along with the corresponding images and Metadata. The text file name shall be the same as the Bates number of the first page of the document. Electronic text must be extracted directly from the Native electronic file to the extent reasonably available unless the document is an image file or contains redactions. In these instances, an OCR text file shall be created and produced in lieu of extracted text. Best efforts will be made to preserve the integrity and full character set for any non-English text by producing UTF-8 or UTF-16LE text files. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. When subjecting paper documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed.

9.      File Types. The parties shall have no obligation to collect, review, or produce the following ESI: (1) all file types on National Institute of Standards and Technology (NIST) database of software applications; (2) all executable files; (3) all system and program files as defined by the NIST library; and (4) all files in the C:\Windows directory (e.g., LOG, DAT, etc. files). To the extent any other file types are excluded from the production, the producing party shall adequately notify the opposing party. To the extent a party identifies material to be produced that is in a file style not explicitly addressed by this Submission, the parties shall meet and confer to determine a mutually agreeable format for production of that material.

10.      Production of Native Format ESI. The parties shall produce Excel spreadsheets, database files, SAS files, audio files, and video files in Native format along with extracted text and Metadata fields identified in Appendix 1. Native files, such as Excel or CSV spreadsheets, shall be redacted with Blackout or similar native redaction tool. The Native document shall be renamed with a Bates Number and should be linked directly to its corresponding record in the

load file using the NATIVE LINK field. For each document produced in Native format, a Bates-numbered TIFF image placeholder should accompany the Native file. The placeholder shall contain language indicating the document was produced in Native form and include the applicable Bates endorsement and Confidentiality designation. Moreover, if production in Native form is necessary to decipher the meaning, context, or content of a document produced in TIFF, the producing party will honor reasonable requests made in good faith for either the production of the original document for inspection or production of the document in Native format. To the extent that either party believes that Native files should be produced for a specific document or class of documents not required to be produced in Native format pursuant to this paragraph, or to the extent records do not easily conform to native or TIFF format (i.e., structured data), the parties shall meet and confer in good faith in an effort to resolve any disagreement.

11.    Production of Paper Documents. Nothing in this Agreement is intended to interfere with, preclude, alter, or otherwise affect the parties' independent obligations to engage in and produce responsive materials that are not ESI. Paper documents shall be produced as static TIFF images and OCR text files in the manner detailed above. Producing paper documents in such form does not convert paper documents into ESI for the purpose of this Submission. For paper documents scanned to TIFF images, Metadata shall not be produced to the extent it does not exist as part of the original document. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape) where reasonably possible.

a.    Attachments. The parent-child relationship (the association between an attachment and its parent document) shall be maintained during scanning and reflected in the attachment Metadata fields.

b.    Unitizing of Documents. Paper documents shall be logically unitized in

the scanning process: distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records. In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab shall be scanned separately, but the relationship among the documents in the binder shall be reflected in coding the beginning and ending document and attachment fields. For documents found in file folders and other similar containers that have labels or other identifying information, the file folder / label shall be scanned. The parties will make their best efforts to unitize documents correctly and will commit to address situations where documents have been improperly unitized.

12.     Redactions. The producing Party may redact from any Group IV TIFF image, metadata field, or native file, material (i) that is protected from disclosure by any applicable privilege or immunity, (ii) governed by applicable privacy law or regulation, (iii) containing non-responsive information, or (iv) that the Stipulation and Protective Order (ECF No. 54) allows to be redacted. In preparing document families for production, the basis for each redaction shall be annotated (i.e., Redacted for Privacy, Redacted as Privileged, Redacted as Non-Responsive, etc.) on the redaction itself. Redactions made in accordance with these provisions need not be included on a privilege log or redaction log.  Completely non-responsive documents attached to an otherwise production-eligible document can be produced as a single-page Bates-stamped TIFF image slip-sheet stating the document has been withheld as non-responsive. For all attachments withheld as non-responsive, the producing party shall produce the ESI metadata listed in Appendix 1 with the exception of text as part of the load file. When producing responsive attachments, the parent email will be produced regardless of responsiveness unless

otherwise protected from disclosure.

13.     Media. The producing party shall produce documents on readily accessible, computer or electronic Media as the parties may hereafter agree upon, including CD-ROM, DVD, external hard drive (with standard PC compatible interface or access to a secure Online Repository agreed upon by the parties) or via secure FTP site. Productions shall be encrypted and password protected during transfer as detailed below. Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media as well as the sequence of the material in that production. The producing party shall accompany all document productions with a transmittal cover letter or email identifying by Bates Number the documents produced.

14.     Encryption of Production Media. To maximize the security of information in transit, the producing party must encrypt any Media on which documents or electronic files are produced. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted Media.

15.      Structured Data. When ESI contained in a commercial or proprietary database format can be produced in an already existing and reasonably available report form, the parties must produce the information in such report form, in the TIFF image format described above. If an existing report form is not reasonably available, then the parties will meet and confer to find a mutually agreeable format for production.

16.     Social Media or Messaging Services. ESI from social media websites (e.g., LinkedIn, Facebook, Twitter, LINE, or Slack) may be produced by capturing information through "screen shots" or "screen captures" and converting them into images with corresponding

extracted text or OCR.

9. **TIMING OF PRODUCTION**

The parties will produce documents on a rolling basis and may separately agree to a schedule for productions, subject to any Court-ordered production deadlines.

10. **PRIVILEGED MATERIALS**

1.    Inadvertent Production/Claw-Back Agreement/FRE 502(d) Order: Pursuant to Fed R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), and to provide clarity and avoidance of doubt, the parties have agreed that the inadvertent, unintentional, or otherwise intentional production of ESI containing protected information (e.g., attorney-client privileged or work-product-protected documents in this litigation) is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceedings. The parties further agree to extend the protections of this rule to state that no showing of precaution is needed to preserve the privileges or protections of an inadvertently produced document.

2.    Privilege Log: The parties have agreed that after a party completes its production of documents in response to an opposing party's request, the responding party will produce a privilege log within a reasonable amount of time in an electronic and easily searchable format. Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate. Where a party redacts a document and leaves its metadata intact (e.g., to, from, time stamp, and subject), such documents will not be required to be included on a privilege log, as long as the basis for the redaction is set forth on the redaction itself as set forth above.

3.      Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

## 11.    DISCOVERY STATUS LETTERS TO THE COURT

The parties will file a joint status letter apprising the Court of the status of discovery and any disputes that may arise on the last business Friday of every month, pursuant to the Court's Order. (ECF No. 47.)

The preceding constitutes the agreement reached between the parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.

SO STIPULATED, through Counsel of Record:

| | |
|---|---|
| Dated: February 27, 2026 | Dated: February 27, 2026 |
| TUCKER ELLIS LLP | SMITH, GAMBRELL & RUSSELL, LLP |
| By: */s/ Smita Gautam*<br>  Chelsea R. Mikula<br>   (admitted *pro hac vice*)<br>  Smita Gautam<br>   (admitted *pro hac vice*) | By: */s/ Edward J. Heppt (with permission)*<br>   Edward J. Heppt |
| | 1301 Avenue of the Americas, 15th Floor<br>New York, New York 10019<br>Tel: (212) 907-9700<br>eheppt@sgrlaw.com |
| 950 Main Avenue, Suite 1100<br>Cleveland, Ohio 44113<br>Tel: (216) 592-5000<br>chelsea.mikula@tuckerellis.com<br>smita.gautam@tuckerellis.com | |
| - and - | - and - |

12

Maha M. Kabbash
TUCKER ELLIS LLP
1776 On the Green
67 E Park Place, Suite 900
Morristown, New Jersey 07960
Tel: (862) 261-2532
maha.kabbash@tuckerellis.com

*Attorneys for Plaintiff*
*321 Precision Conversions LLC*

Jennifer A. Lloyd (admitted *pro hac vice*)
MILLER LLOYD PC
P.O. Box 302068
Austin, Texas 78703
Tel: (512) 694-5578
jlloyd@millerlloyd.com

*Attorneys for Defendants*
*Spectre Cargo Solutions LLC and*
*Spectre Air Capital LLC*

**SO ORDERED.**

Dated: _____ March 4 _____, 2026

_____

**Ona T. Wang**
United States Magistrate Judge

13

**APPENDIX 1 – METADATA TO BE PRODUCED**

| FIELD | FORMAT | DESCRIPTION | Paper | eDocs | eMail |
|---|---|---|---|---|---|
| DATERCVD | Date (date:time) | Date Received | | | x |
| DATEMTGSTRT | Date (date:time) | Date Meeting Start | | x | x |
| DATEMTGEND | Date (date:time) | Date Meeting End | | x | x |
| FILESIZE | Size of items in bytes of KB | File Size | | x | x |
| DATELASTPRINT | Date (date:time) | Date Last Print | | x | x |
| SERVERTIMEZONE | Time zone is UTC | Coordinated Universal Time | | x | x |
| DATESENT | Date (date:time) | Sent Date for email | | | x |
| DATELASTMOD | Date (date:time) | Last Modified File System | | x | |
| LASTEDITEDBY | Fixed-Length Text | Name of the last person to edit the document from extracted metadata | | x | |
| FILEEXT | Fixed-Length Text | File Extension | | x | x |
| FILENAME | Fixed-Length Text | File Name | | x | x |
| AUTHOR | Fixed-Length Text | The author of the document listed in the metadata | | x | |
| HASHVALUE | Fixed-Length Text | MD5 or SHA-1 Hash (or CONTROL_ID for scanned paper) for duplicate identification | | x | x |
| FILEPATH | Fixed-Length Text | Source file path to location, folder name and source | | x | |
| BCC | Long Text | BCC Recipient | | | x |
| CC | Long Text | CC Recipient | | | x |
| FROM | Long Text | Sender | | | x |
| SUBJECT | Fixed-Length Text | Subject of email message | | | x |
| TO | Long Text | Recipient | | | x |
| PAGECOUNT | Whole Number | Page count | x | x | x |
| CONFIDENTIALITY | Fixed-Length Text | Confidentiality designation | x | x | x |
| REDACTION | Fixed-Text Length | Redaction Designation (Yes) | x | x | x |

14

| NATIVE LINK | Fixed-Length Text | Link to native file in production .\natives\001\ ABC00000000 | | x | |
| CONVINDEX | Fixed-Length Text | Conversation Index (Email conversation Hash if available) | | | x |
| ENTRYID | Fixed-Length Text | EntryID (Unique value assigned to Outlook items) | | | x |
| EMAILHD | Fixed-Length Text | Email Header | | | x |
| MESSAGEID | Fixed-Length Text | Message ID | | | x |
| MAILSTORE | Fixed-Length Text | Mailstore (name of email data file processed) | | | x |
| BEGNO | Fixed-Length Text | Beginning Bates number, ex. ABC00000000, on the first page of the document | x | x | x |
| ENDNO | Fixed-Length Text | Ending Bates number on the last page of the document | x | x | x |
| BEGATTACH | Fixed-Length Text | Beginning of family range, first number of first family member | x | x | x |
| ENDATTACH | Fixed-Length Text | End of family range, last number of last family member | x | x | x |
| PARENTID | Fixed-Length Text | Start No. of Parent Bates (only in Child records) | x | x | x |
| ATTCHID | Fixed-Length Text | Start No. of each Child document (only in Parent records) | x | x | x |
| ATTACHCOUNT | Numeric | The number of attachments to a document | x | x | x |

| CUSTODIAN | Multiple Choice | Custodian Name. Similar names should be distinguished by a unique initial or other unique identifier. For ex., Smith, John A., Smith, John B. | x | x | x |
|---|---|---|---|---|---|
| ALLCUSTODIAN | Multiple Choice | Name of other custodian(s) of a documents in last name, first name format | | x | x |
| DATECRTD | Date (date:time) | Creation Date File System, ex. mm/dd/yyyy:10:08 31 PM | | x | |
| TEXT LINK | Fixed-Length Text | Link to searchable text file in production .\text\001\ABC00000000 | x | x | x |

** As it relates to the CUSTODIAN and ALLCUSTODIAN metadata fields above, the producing party reserves the right to produce in single field (e.g., CUSTODIAN) since the metadata may already be exported and logged as such.