UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

321 PRECISION CONVERSIONS LLC,
Plaintiff,

v.

SPECTRE CARGO SOLUTIONS LLC and SPECTRE AIR CAPITAL LLC,
Defendant(s).

25 Civ. 7304 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

Before the Court is a Report and Recommendation ("R. & R." or the "Report") from Magistrate Judge Wang, recommending that Defendant Spectre Air ("Defendant" or "Spectre Air") be dismissed from this matter because (1) Plaintiff 321 Precision Conversions ("Plaintiff" or "Precision") failed to establish personal jurisdiction over Spectre Air, Report, at 4-10, ECF No. 63; (2) Plaintiff failed to state a claim for tortious interference against Spectre Air, *id.* at 10-12; and (3) Plaintiff, arguing in the alternative, failed to show Spectre Air is the alter ego of Defendant Spectre Cargo such that Plaintiff has personal jurisdiction over Spectre Air and that Spectre Air is liable for breach of contract, *id.* at 12-19. Plaintiff timely filed objections. Pl.'s Objs., ECF No. 64. Spectre Air timely filed its responses to Plaintiff's objections. Def.'s Resp., ECF No. 67. For the reasons stated herein, the Report's recommendation that this case be dismissed is **ADOPTED,** and leave to amend is **DENIED**.

## BACKGROUND

This action is assigned to Magistrate Judge Wang for general pretrial purposes and report and recommendation on dispositive motions. ECF No. 8. Familiarity with the factual background and the relevant procedural history of this case as set out in the Report is assumed. Briefly, however, this case arises from a contract (the "Contract" or "Conversion Agreement") between

Precision and Defendant Spectre Cargo (not joined in the motion to dismiss) "for the conversion of 18 aircraft from passenger planes to freight planes at $6.5 million per aircraft." Report, at 2. "Spectre Cargo is a wholly-owned subsidiary of Spectre Air. . . . Spectre Air is neither a signatory nor a party to the Conversion Agreement. . . . [and t]here are no references to Spectre Air at all in the Conversion Agreement." *Id.*

Precision's theory of liability against Spectre Air is that Spectre Air engaged in tortious interference with the contract because it "intentionally and improperly procured Spectre Cargo's repudiation and breach of the Conversion Agreement with respect to the conversion of aircraft owned by Spectre Air." *Id.* Alternatively, Precision argues that Spectre Air is liable for Spectre Cargo's breach of contract because Spectre Air acted as an alter ego of Spectre Cargo. *Id.* at 3.

Precision raises two objections to the Report. First, Precision argues that the Report improperly "requires a *prima facie* showing that Spectre Air's conduct falls within the exception to the 'Stranger Rule' of New York's long-arm statute[,]" but "[a]t the Rule 12 stage, the [long-arm statute] should not require *proving* a tort." Pl.'s Objs. at 4, ECF No. 64 (emphasis in original). Second, Precision argues that the Report applies a more stringent standard than is required at the pleading stage for making a *prima facie* showing under an alter-ego theory of personal jurisdiction. *Id.* at 2-3.

Spectre Air argues that Precision's objections "amount[] to little more than disagreement with the [Magistrate Judge's] application" of relevant caselaw, and that "Judge Wang already considered [Precision's] allegations." Def.'s Resp. at 3, ECF No. 67. Spectre Air also notes that Precision does not object to several independent grounds for dismissal, including the Report's conclusions that (1) personal jurisdiction does not comport with due process concerns; (2) the tortious interference claim fails because "New York and Texas courts have held that a parent

corporation cannot, as a matter of law, tortiously interfere with its subsidiary's contracts[,]" Report at 11; and (3) there is no viable alter-ego theory of liability. Def.'s Resp. at 5.

Finally, Precision asks that if the Court adopts the Report, that it do so without prejudice and grant Precision leave to amend. Pl.'s Objs. at 5. Plaintiff attaches a redlined proposed third amended complaint to its objections. *See generally* Pl's Objs. Ex. 1 Proposed Third Amended Complaint ("Proposed TAC"), ECF No. 64-1. Spectre Air argues that leave to amend would be improper because amendment is futile, Def.'s Resp. at 7-10, and because it is "dilatory, transparently strategic, and unduly prejudicial," *id.* at 10-11.

## LEGAL STANDARD[1]

In reviewing a magistrate judge's report and recommendation, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). For dispositive matters, a district judge is required to "determine de novo any part of the magistrate judge's disposition that has been properly objected to" by any party. Fed. R. Civ. P. 72(b)(3). For those portions to which no proper objection is made, a district court need only satisfy itself that there is no "clear error on the face of the record." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 n.4 (2d Cir. 2022).

An objection is proper when it is timely, specific, and does "not raise new arguments not previously made before the magistrate judge." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025). A district judge may not reject a party's objections by "appl[ying] an additional qualification . . . [that] requir[es] that an objection may not reiterate . . . arguments already raised before the magistrate judge." *Id.* at 359-60. But, when a party has not properly

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

made objections, for instance, by making "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers, it] will not suffice to invoke de novo review." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 313 (S.D.N.Y. 2009); *see also Nambiar*, 158 F.4th at 361 ("But as we explained, [clear error review] should be applied *only* when the objections are nonspecific or merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (quotations omitted).

## DISCUSSION

Broadly speaking, there are two issues before the Court: (1) whether the Report erred with respect to its recommendation to grant Spectre Air's motion to dismiss; and (2) if not, whether Precision should be granted leave to amend to address the pleading deficiencies identified in the Report. For the reasons stated herein, the Court first determines that the Report is **ADOPTED IN FULL** and then determines that Precision's request to amend is **DENIED**.

### I. Report and Recommendation

#### A. Personal Jurisdiction

1. Statutory Basis for Personal Jurisdiction

With respect to the Report's conclusion that the Court lacks personal jurisdiction over Spectre Air, Precision focuses its objection on Magistrate Judge Wang's analysis of whether Spectre Air is amenable to service under New York's long-arm statute. Specifically, Precision argues that the Report required it to *prove* tortious interference when all that is required is an *allegation* that the defendant committed a tortious act. Pl.'s Objs. at 4. But Precision makes no objection with respect to the second prong of the jurisdictional analysis: whether personal jurisdiction comports with due process. Report at 10; *see Metro. Life Ins. Co. v. Roberston-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) ("[I]n resolving questions of personal jurisdiction in a

diversity action, a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process.").

Because there is no proper objection to Magistrate Judge Wang's due process analysis, the Court need only satisfy itself that there is no "clear error on the face of the record." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 n.4 (2d Cir. 2022). The Court can find no such error, clear or otherwise, with respect to Magistrate Judge Wang's conclusion that Precision "fail[ed] to address any due process concerns at all." Report at 10. Accordingly, because consideration of due process is required to establish personal jurisdiction, and because the Court adopts Magistrate Judge Wang's recommendation that Precision failed to meet its burden in that respect, the Court may adopt the Report's conclusion that Precision has failed to establish personal jurisdiction under New York's long-arm statute, and need not address Precision's assertion that the Report improperly required it to "prove" tortious interference.[2]

---

[2] In any case, the Report does no such thing. Magistrate Judge Wang expressly noted that "the plaintiff need not actually prove that [the] defendant committed a tort but rather need only state a colorable cause of action." Report at 6 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002)). The Report goes on to state that "Precision does not plead sufficient facts (or indeed, any facts) about Spectre Air's conduct to suggest that it was undertaken for the *purpose of inducing* Spectre Cargo's breach." *Id.* (emphasis added). In its objections, Precision points to allegations in the Second Amended Complaint ("SAC") that Spectre Air had knowledge of Spectre Cargo's conduct, and that such conduct is "attributable" to Spectre Air. SAC ¶¶ 98-106, ECF No. 36; *see also* Pl.'s Objs. at 4. But beyond these conclusory allegations, the SAC does not allege *facts* indicating that the purpose of Spectre Air's conduct was to induce Spectre Cargo to breach the Conversion Agreement. Plaintiff appears to also object to the Report's analysis under the "Stranger Rule," Pl.'s Objs. at 4, which states that "only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract." *Koret, Inc. v. Christian Dior, S.A.*, 554 N.Y.S.2d 867, 869 (App. Div. 1st Dept. 1990); *Multi-Juice, S.A. v. Snapple Beverage Corp.*, No. 02 Civ. 4635, 2003 WL 1961636, at *5 (S.D.N.Y. Apr. 25, 2003) (finding that a parent corporation cannot tortiously interfere with subsidiary contracts, as a matter

2. Personal Jurisdiction Under Alter-Ego Theory

In the alternative, Precision asserts personal jurisdiction under a theory that Spectre Air is the alter-ego of Spectre Cargo—which, while insufficient to save Precision's tortious interference claim (because a party cannot tortiously interfere with its own contracts), could serve as a jurisdictional basis for Precision's breach of contract claim. In its objections, Precision argues that the Report "applies the factors for an alter-ego analysis for jurisdictional purposes . . . too stringently" because the factors are non-exclusive. Pl.'s Objs. at 2. At the outset, the Court notes that this objection is likely improper because it simply rehashes arguments made to Magistrate Judge Wang. However, for the sake of completeness, the Court conducts *de novo* review on this point.

On *de novo* review, Precision's argument fails because the purportedly overlooked facts it points to are insufficient to show that "the corporation is being used by the alleged dominating entity to advance its own personal interests as opposed to furthering the corporate ends." *Caplan v. Dollinger*, 803 F. Supp. 3d 219, 232 (S.D.N.Y. 2025). None of the facts Precision points to show: (1) a failure to observe corporate formalities, such as failing to hold meetings of the Board of Directors, passing resolutions, and providing annual audits, *see, e.g.*, *Miramax Film Corp. v. Abraham*, No. 01 Civ. 5202, 2003 WL 22832384, at *5 (S.D.N.Y. Nov. 25, 2003); (2)

---

of law). But Precision does not dispute that the Stranger Rule applies here, and fails to plead any facts that would satisfy it.

Plaintiff's objections with respect to New York's long-arm statute fail for the additional reason that Plaintiff only objects to the Report's analysis of the first element of the statute—whether a tortious act occurred outside of New York. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006) (describing the five elements of New York's long-arm statute); *see also* N.Y. C.P.L.R. § 302(a)(3)(ii) (McKinney 2008). The Court is satisfied that there is no error, clear or otherwise, with respect to Magistrate Judge Wang's analysis of the other four required elements. Report at 7-9.

undercapitalization, such as reliance on Spectre Air for operating funds, evidence of payment of debts on behalf of Spectre Cargo, or any other facts that would demonstrate that Spectre Cargo's liabilities exceeded its assets, *see, e.g.*, *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09 Civ. 6148, 2012 WL 12932049, at *22 (S.D.N.Y. July 17, 2012);[3] or (3) intermingling of funds, for example by paying Spectre Cargo's legal fees, *id.* at 24, or by using Spectre Cargo's funds as its own, *see, e.g.*, *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 135 (2d Cir. 1997). *Caplan*, 803 F. Supp. 3d at 232 (factors considered in alter-ego jurisdictional analysis).

Precision has pleaded that Spectre Air and Spectre Cargo share the same principal place of business, Second Am. Compl. ("SAC") ¶¶ 8-9, ECF No. 36, that there is an overlap in directors, *id.* ¶ 99, and that Spectre Air used Spectre Cargo to perpetrate a wrongful act against Precision, *id.* ¶¶ 101, 104. But as Magistrate Judge Wang noted, "courts routinely hold that . . . allegations [of shared offices and directors], standing alone, are insufficient" for jurisdictional purposes. *Caplan*, 803 F. Supp. 3d at 232; *see also* Report at 15. And Precision's assertions that Spectre Air committed a wrongful act against Precision by failing to fund various payments owed by Spectre Cargo, SAC ¶ 101, or by no longer converting specific aircrafts, *id.* at ¶ 104, are inadequate to overcome the Court's "reluct[ance] to disregard the corporate entity" when considering whether two entities are alter-egos of one another. *Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents*

[3] In fact, Precision pleads the *opposite*, stating that Spectre Air "fail[ed] to fund the remaining induction payment owed by Spectre Cargo." SAC ¶ 101. Precision alleges that Spectre Cargo's failures with respect to the Conversion Agreement are "directly attributable to these acts by Spectre Air, a parent company that, upon information and belief, funds and directs the actions of its agent/alter ego, Spectre Cargo." *Id.* at ¶ 102. But this is conclusory and is inadequate to make a *prima facie* showing of personal jurisdiction under an alter-ego theory. *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) ("Conclusory non-fact-specific jurisdictional allegation" or "legal conclusions couched as a factual allegations" are insufficient to establish a prima facie showing of jurisdiction); *Moreira v. Société Générale, S.A.*, 125 F. 4th 371, 395 (2d Cir. 2025) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.").

*DMCC*, 632 F. Supp. 3d 562, 570 (S.D.N.Y. 2022). For one, these allegations do not suggest that Spectre Cargo was used as an *instrument* for committing such wrongful acts, for example by detailing how Spectre Cargo and Spectre Air cooperated to advance the breach, or why such actions were supposedly intentional. *Long Side Ventures LLC v. Hempacco Co.*, No. 22 Civ. 8152, 2023 WL 6386888, at *8 (S.D.N.Y. Sep. 29, 2023) ("Plaintiffs do not detail how Defendants cooperated to transfer assets fraudulently, or why their only intent was to render VidBox Mexico 'judgment-proof.'"). Further, the Court cannot give this factor dispositive weight; if the Court were to do so, a plaintiff could establish personal jurisdiction over any defendant that allegedly prompted another entity to breach a contract, even in absence of any of the other factors relevant to the alter ego analysis.

As Precision correctly points out, "no one factor is determinative" in the alter-ego analysis; rather, what is important is that a plaintiff "show that the allegedly controlled entity was a shell for the allegedly controlling party." *Caplan*, 803 F. Supp. 3d at 231-32. Considering all of the relevant factors collectively, the Court concludes that Precision has not met this burden, even under the relaxed standards applied at the pleading phase of the litigation.

**B. Liability**

Precision does not object to the Report's conclusion that Precision failed to plead tortious interference or liability under an alter-ego theory, which requires a showing of actual fraud. The Court has reviewed these portions of the Report and can find no error, clear or otherwise. Accordingly, it is **ORDERED** that the Report's recommendation to dismiss is **ADOPTED**.

**II. Leave to Amend**

Precision requests that it be given an opportunity to amend and attaches a redlined Proposed TAC to its objections. Pl.'s Objs. at 5. Spectre Air argues that amendment is futile and that it is dilatory, strategic, and unduly prejudicial. Def.'s Resp. at 7-11. The Report makes no

recommendation with respect to whether dismissal of Spectre Air shall be with or without prejudice, and whether Precision should have an opportunity to amend.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires," although "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007). As detailed herein, the Court finds that leave to amend would be futile because the Proposed TAC does not state a claim with respect to Spectre Air acting as an alter-ego to breach the contract.

**A. Personal Jurisdiction**

1. Statutory Basis for Personal Jurisdiction

As discussed in the Report, "Precision fails to plead any injury in New York," which is an element of New York's long-arm statute. Report at 8. The Proposed TAC does not plead any additional facts that address this requirement. Likewise, the Proposed TAC does not add any allegations that support the last element of New York's long-arm statute: that Spectre Air derives substantial revenue from interstate or international commerce. As such, the Proposed TAC does not establish personal jurisdiction under New York's long-arm statute.

2. Personal Jurisdiction Under an Alter-Ego Theory

For purposes of establishing personal jurisdiction over Precision's breach of contract claim, the Proposed TAC appears to cure some, but not all,[4] of the deficiencies discussed *supra* with respect to Precision's theory that personal jurisdiction exists because Spectre Air acted as an alter-ego of Spectre Cargo. Specifically, the Proposed TAC states that "[p]ayments that were made on

---

[4] No facts are alleged, for example, that suggest Spectre Air disregarded corporate formalities.

behalf of Spectre Cargo under the Conversion Agreement were in fact funded and made by Spectre Air, including checks with the 'Spectre Air' header indicating it came from Spectre Air's accounts, and wire transfers with 'Spectre Air' listed as the originator." Proposed TAC ¶ 37. This supports the undercapitalization and intermingling of funds factors under *Caplan*. 803 F. Supp. 3d at 232. But as explained below, even assuming without deciding that these new factual allegations, combined with the allegations that Spectre Air and Spectre Cargo share a principle place of business and that a number of employees overlap, are sufficient to establish personal jurisdiction for alter-ego purposes, amendment would still be futile for failure to state a claim.

**B. Liability**

As noted above, the Court need not address whether the Proposed TAC states a claim with respect to tortious interference, because the Proposed TAC does not plead facts sufficient to establish personal jurisdiction over Spectre Air on that claim.[5] As such, the Court focuses its

---

[5] Even if the Court were to consider whether the Proposed TAC states a claim of tortious interference against Spectre Air, the Court would conclude that it does not. As the Report notes, under New York law, a parent corporation cannot, as a matter of law, interfere with its subsidiary's contracts unless the parent corporation has acted with malice. Report at 11 (citing *Levinson v. Primedia Inc.*, No. 02 Civ. 2222, 2007 WL 2298406, at *11 (S.D.N.Y. Aug. 9, 2007)). "Actual malice can be shown by recklessness, which may be found where there are obvious reasons to doubt the veracity of the speaker or the accuracy of his reports." *Zurich Am. Life Ins. Co. v. Nagel*, 590 F. Supp. 3d 702, 728 (S.D.N.Y. 2022). Further, it must be shown that Spectre Air "was motivated solely by malice rather than self-interest or other economic considerations." *Id.*

In its Proposed TAC, Precision makes no factual allegations that suggest recklessness or that Spectre Air was motivated solely by malice. Precision alleges that "Kevin Casey knowingly misrepresented to Precision and its Installer that Spectre Air was going to resolve the payment issues and convert MSN 1642" but that Spectre Air ultimately did not, Proposed TAC ¶¶ 70, 72; that "Spectre Air knowingly allowed Spectre Cargo to enter into the Conversion Agreement and the commitment to convert 18 aircraft with full knowledge that Spectre Cargo did not have the aircraft or the funds for all 18 conversion slots," *id.* ¶ 107; and that "Spectre Air acted knowingly and maliciously by misrepresenting to Precision its intention to convert certain aircraft and make certain payments while intentionally failing to fund Spectre Cargo," *id.* ¶ 117. To the extent that these allegations state that Spectre Air acted "maliciously," the incantation of that work, without facts suggesting malice, is conclusory. And the *facts* alleged here while suggestive of mismanagement and even misrepresentations, do not indicate actual malice. Casey's alleged

discussion on whether the Proposed TAC makes factual allegations sufficient to state a claim of breach of contract against Spectre Air as an alter-ego of Spectre Cargo.

The Court assumes, without deciding, that the Proposed TAC has met the first element required to pierce the corporate veil under Texas law sufficient to impose liability using the alter-ego theory: that Spectre Air is an alter-ego of Spectre Cargo. *U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 213 (Tex. App. 2018). Precision has not, however, adequately pleaded the second element, whether the corporate fiction was used to perpetrate an actual fraud on Precision, in the Proposed TAC. *Id.* at 213-14.

As discussed in the Report, under Texas law "[t]here must be evidence of abuse, such as actual fraud, demonstrating injustice and inequity." Report at 18 (citing *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008)). "[A]ctual fraud can be the concealment of material facts or the failure to disclose a material fact." *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 585 (Tex. App. 2007). In addition, actual fraud requires a showing that the alter-ego used the corporation to advance the fraud primarily for the direct personal benefit of the alter-ego. *SSP Partners*, 275 S.W.3d at 455.

The only factual allegations in the Proposed TAC that suggest "the concealment of material facts or the failure to disclose a material fact," *McCarthy*, 251 S.W. 3d at 585, are that "Kevin Casey knowingly misrepresented to Precision and its Installer that Spectre Air was going to resolve

---

representations that the payment issues would be resolved did not turn out to be correct—but there are no factual allegations indicating that they were made recklessly. And even if the Court were to conclude that the allegations were sufficient to show recklessness, there are no factual allegations suggesting that they were made for reasons other than self-interest or economic considerations, especially when the Proposed TAC is rife with allegations that Spectre Air's actions were taken "for its own financial benefit," *id.* ¶ 114, "with the intention to insulate itself from potential liabilities," *id.* ¶¶ 30, 115, and "as leverage for negotiating and entering into other contracts," *id.* ¶ 114.

the payment issues and convert to MSN 1642," that "Spectre Cargo and/or Spectre Air later requested the Installer remove one engine from the aircraft, in repudiation of Spectre Cargo's duty to perform under the Conversion Agreement," and that "Spectre Air ultimately made the decision to not convert MSN 1642 in this slot." Proposed TAC ¶¶ 70-72.[6]

These factual allegations, however, do not make clear that Spectre Cargo was used to advance a direct personal benefit to Spectre Air. *SSP Partners*, 275 S.W. 3d at 455. Perhaps recognizing this weakness, Precision makes conclusory allegations that Spectre Cargo was used to leverage negotiations with other companies Spectre Air was entering into contract with, Proposed TAC ¶ 114; that Spectre Cargo was used to insulate Spectre Air from liabilities, *id.* at ¶ 115; and that these actions were taken for Spectre Air's "own financial benefit," *id.* ¶ 116. But the Court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). No factual allegations are provided within the Proposed TAC that, taken as true and construed liberally, support the inference that Spectre Air had any financial benefit from these particular actions, that these actions somehow benefited Spectre Air in contract negotiations with third-parties, or that Spectre Cargo was used in some nefarious way such that Spectre Air is shielded from liabilities. *Id.* at 106-107 ("In assessing the complaint, [a

---

[6] The Proposed TAC also alleges that "Spectre Air knowingly allowed Spectre Cargo to enter into the Conversion Agreement and the commitment to convert 18 aircraft with full knowledge that Spectre Cargo did not have the aircraft or the funds for all 18 conversion slots." Proposed TAC ¶ 107. This is purely conclusory. No where in the Proposed TAC does Precision make any factual allegations to support its conclusion that Spectre Cargo was not in possession of the aircraft or that Spectre Cargo does not have the funds for the conversion slots, let alone any factual allegations to support the contention that Spectre Air had "full knowledge" of these alleged facts.

court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor.").

Because the Proposed TAC fails to establish personal jurisdiction under New York's long-arm statute, and because it fails to state a claim that Spectre Air acted as an alter-ego of Spectre Cargo to breach the Conversion Agreement, amendment would be futile. *Morales v. New York Univ.*, 585 F. Supp. 3d 610, 613 (S.D.N.Y. 2022) (holding that amendment is futile when it cannot withstand a motion to dismiss).

**CONCLUSION**

For the foregoing reasons, the Report is **ADOPTED IN FULL** and leave to amend is **DENIED**, with prejudice. The Clerk of Court is respectfully requested to terminate ECF Nos. 41 and 64, and to terminate Defendant Spectre Air from this matter.

SO ORDERED.

Dated: September 28, 2026

New York, New York

DALE E. HO
United States District Judge